# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

OTTIS DUGAR AND DEMITRI DUGAR,

Plaintiffs,

v.

U.S. BANK NATIONAL ASSOCIATION,

Defendant.

No. 21 CV 4052

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

In February 2020, plaintiffs Ottis and Demitri Dugar visited a U.S. Bank in Oak Park, Illinois. Later that day, the Dugars were seized at gunpoint and arrested by police officers. But the Dugars, an older Black couple, had done nothing wrong. Rather, a (much younger) Black man had allegedly attempted to rob the bank on the same day as the Dugars's visit. The Dugars say that bank employees gave police information based solely on the color of their skin, causing their arrest. Plaintiffs sued U.S. Bank in state court, and defendant removed the case to federal court. The Dugars bring claims under Illinois law for discrimination, false arrest, and negligent hiring, training, and supervision. Plaintiffs move to remand the case, while U.S. Bank seeks dismissal for failure to state a claim. For the reasons that follow, plaintiffs' motion to remand is denied and defendant's motion to dismiss is granted.

**I.  Legal Standards**

A defendant may remove a case from state court when the case could originally have been filed in federal court. *See Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th

Cir. 2018) (citing 28 U.S.C. § 1441(a)). The removing party bears the burden of establishing federal jurisdiction. *See Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018). Any "doubts regarding removal are resolved in favor of the plaintiff's choice of forum in state court." *Morris v. Nuzzo*, 718 F.3d 660, 668 (7th Cir. 2013).

A complaint must contain a short and plain statement that suggests a plausible right to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). I accept all factual allegations as true and draw all reasonable inferences in plaintiffs' favor, but I disregard legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678. A plaintiff must provide "more than labels" or "a formulaic recitation of a cause of action's elements," *Twombly*, 550 U.S. at 555, and the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562.

## II. Background

In February 2020, Ottis and Demitri Dugar went to a U.S. Bank in Oak Park, Illinois to make a financial transaction. [14] ¶ 6.[1] Ottis, an 86-year-old Black man, and Demitri, a 67-year-old Black woman, visited the bank on the same day that a 30-to-40-year-old Black man tried to rob it. *Id.* ¶¶ 2–3, 7, 18. The Dugars had nothing to

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the amended complaint, [14].

2

do with the attempted robbery, yet bank employees provided information to the police suggesting that they were involved. *Id.* ¶¶ 9–10, 17. As a result, police officers stopped, seized at gunpoint, arrested, and threatened the Dugars. *Id.* ¶¶ 21–23.

Both Dugars were at least 27 years older than the individual who attempted to rob the bank, and they did not match his description. *Id.* ¶¶ 19–20. They contend that U.S. Bank breached a duty not to discriminate against customers when its employees "provided false information to the police indicating that the [Dugars] were the alleged attempted bank robbers simply because of the color of their skin." *Id.* ¶ 16. The complaint alleges that U.S. Bank failed to ensure that its employees were racially sensitive and competent to work with—and not discriminate against—racially diverse customers. *Id.* ¶¶ 26–28, 33–35, 43–45.

The Dugars filed suit in the Circuit Court of Cook County, bringing a negligence claim against U.S. Bank under Illinois law. U.S. Bank timely removed the case. After defendant filed a motion to dismiss, the Dugars amended their complaint as a matter of course, bringing claims against defendant under Illinois law for discrimination and false arrest (Count I), and for negligent hiring, training, and supervision (Counts II–IV). Defendant again moves to dismiss.

III. Analysis

   A. **Motion to Remand**

The Dugars seek a remand to state court, arguing that this court lacks subject-matter jurisdiction. Because this case arises under state law, federal jurisdiction exists if the parties are citizens of different states and the amount in controversy

exceeds $75,000. *See* 28 U.S.C. § 1332(a). All agree that the parties are diverse—the Dugars are Illinois citizens and U.S. Bank National Association is a Delaware corporation with its principal place of business in Minnesota. [9] ¶¶ 5–6; [10] ¶ 3; *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). The Dugars argue, however, that the amount in controversy falls short of the jurisdictional threshold.

When removal is based on diversity of citizenship, generally "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). But "the notice of removal may assert the amount in controversy if the initial pleading seeks … a money judgment, but the State practice … permits recovery of damages in excess of the amount demanded." *Id.* § 1446(c)(2)(A)(ii). The bar is not high: "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011) (removing party's "good-faith estimate is acceptable if it is plausible and adequately supported by the evidence"). When a plaintiff contests the defendant's amount-in-controversy allegation, removal is proper "if the district court finds, by the preponderance of the evidence, that the amount in controversy" exceeds $75,000. 28 U.S.C. § 1446(c)(2)(B). The amount in controversy "is evaluated as of the time of removal." *Carroll v. Stryker Corp.*, 658 F.3d 675, 680–81 (7th Cir. 2011).

Here, plaintiffs acknowledge that Cook County permits recovery of damages in excess of the amount demanded, *see* [10] ¶ 12, and the initial complaint sought

4

"compensatory damages in excess of fifty thousand dollars ($50,000.00), punitive damages, and costs." [9-1] ¶ 24. The amended (and original) notice of removal alleges that the amount in controversy exceeds $75,000 based on the initial complaint's prayer for relief and plaintiffs' pre-suit settlement demand for a sum exceeding $75,000. [9] ¶¶ 10–12; [2] ¶¶ 10–12. The Dugars contest defendant's asserted amount in controversy on three grounds: (1) the jurisdictional minimum for the Cook County Law Division (where the case was originally filed) is $30,000; (2) the original complaint sought compensatory damages in excess of $50,000, punitive damages, and costs; and finally, (3) plaintiffs' pre-suit settlement demand of $90,000 is inadmissible under Federal Rule of Evidence 408. [10] ¶¶ 6–8, 17–19.

The court has jurisdiction. The original complaint sought compensatory damages in excess of $50,000 plus punitive damages, and that open-ended request indicates that the amount in controversy exceeds $75,000. A punitive damages multiplier greater than 0.5 would put the complaint's demand over the jurisdictional threshold. *See Hunt v. DaVita, Inc.*, 680 F.3d 775, 777 (7th Cir. 2012) (describing punitive-to-compensatory damages ratio of two or three as "modest"). Further, Federal Rule of Evidence 408—which prohibits the introduction of settlement offers into evidence to prove liability or invalidity of the claim or its amount—does not foreclose consideration of plaintiffs' pre-suit settlement demand here. Rather, the court may consider settlement offers at this stage, when the offer is used "to show the stakes, a question independent of the claim's merit." *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006). Coupling the original complaint's prayer for

5

relief with plaintiffs' pre-suit settlement demand for $90,000, it is more likely than not that the stakes of the litigation exceeded $75,000 at the time of removal.

Plaintiffs have not presented persuasive evidence to the contrary. While the state-court jurisdictional minimums fall below $75,000, that does not foreclose a plaintiff from bringing a case in which the amount in controversy far exceeds those minimums. Plaintiffs contend that the settlement demand aggregated the Dugars's claims, so splitting the settlement between the two would be below the jurisdictional threshold. [10] ¶ 28. While it's true that "the claims of multiple litigants cannot be aggregated to reach the jurisdictional amount in controversy," *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 733 (7th Cir. 2021) (citation omitted), there are two problems with plaintiffs' argument. For starters, plaintiffs submitted no evidence demonstrating that settlement offer attempted to aggregate two roughly equal claims, each under $75,000 (for example, two $45,000 claims). But even if the plaintiffs' settlement demand represented a $45,000 ask for each plaintiff, that still indicates that the amount in controversy exceeds $75,000 for each plaintiff. Pre-suit settlement eliminates uncertainty and costs associated with prolonged litigation and trial. Accordingly, a plaintiff's willingness to accept a settlement amount below the jurisdictional threshold, as here, may still "impl[y] that the stakes at trial comfortably exceed the minimum." *See Rising-Moore*, 435 F.3d at 816–17 (plaintiff's willingness to accept $60,000 settlement supports conclusion that controversy exceeds $75,000).

The motion to remand is denied.

**B.     Motion to Dismiss**

U.S. Bank moves to dismiss all four counts of the complaint for failure to state a claim under Rule 12(b)(6).

*1.     False Arrest*[2]

At common law, false arrest is "one means of committing false imprisonment." *Dutton v. Roo–Mac, Inc.*, 100 Ill.App.3d 116, 119 (2d Dist. 1981); *see also Wallace v. Kato*, 549 U.S. 384, 388–89 (2007) (discussing the overlap between the torts).[3] False imprisonment is the "unreasonable restraint of an individual's liberty, against his will, caused or procured by the defendant." *Poris v. Lake Holiday Prop. Owners Ass'n*, 2013 IL 113907, ¶ 61. To prevail in a claim for false arrest or false imprisonment, a plaintiff must show that he was "restrained or arrested by the defendant, and that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff." *Meerbrey v. Marshall Field & Co.,* 139 Ill.2d 455, 474 (1990).

A private individual may be liable for false arrest if they "caused or procured" the plaintiff's arrest. *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 618 (7th

---

[2] Plaintiffs label Count I of the amended complaint as a "Discrimination/False Arrest" claim. Plaintiffs advance two different legal theories. First, plaintiffs assert a traditional false-arrest claim against the bank, and second, plaintiffs allege that the bank breached a duty not to discriminate against them as customers. I address the latter theory below.

[3] In diversity cases, a federal court applies the substantive law of the state in which it sits. *See Roberts v. Alexandria Transportation, Inc.*, 968 F.3d 794, 797–98 (7th Cir. 2020) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)). The parties do not dispute that Illinois law governs this case. *See Med. Protective Co. of Fort Wayne , Indiana v. Am. Int'l Specialty Lines Ins. Co.*, 911 F.3d 438, 445 (7th Cir. 2018) ("If neither party disputes the issue, we will apply the law of the state in which the federal court sits.").

7

Cir. 1989) (quoting *Dutton*, 100 Ill.App.3d at 119). Liability attaches only when a defendant "personally participated [in the arrest] by direct act or by indirect procurement." *Schroeder*, 875 F.2d at 618 (quoting *Campbell v. Kaczmarek*, 39 Ill.App.3d 465, 470 (1st Dist. 1976)). More precisely, a plaintiff must show that either "the defendant directed the officers to make the arrest or the defendant's complaint was the sole basis for the arrest." *Boyd v. City of Chicago*, 378 Ill.App.3d 57, 70 (1st Dist. 2007). But merely giving information to the police—whether true or false—is insufficient to constitute participation in an arrest. *Butler v. Goldblatt Bros.*, 589 F.2d 323, 326 (7th Cir. 1978) (applying Illinois law) ("[A] private party who furnishes inaccurate information to law enforcement officers could not be held liable for false arrest on that ground alone."); *Carey v. K-Way, Inc.*, 312 Ill.App.3d 666, 670 (1st Dist. 2000).

The Dugars contend that U.S. Bank employees procured their arrest, and therefore, defendant is liable for false arrest. The complaint alleges that bank employees provided information to the police suggesting that the Dugars "were somehow involved in an alleged attempted bank robbery" and "provided false information to the police indicating that the Plaintiffs were the alleged attempted bank robbers simply because of the color of their skin." [14] ¶¶ 9, 16. Plaintiffs argue that, but for the employees providing false information to the police, the Dugars would not have been arrested. *See* [22] at 4. And defendant would be liable for employees if, while acting on its behalf, they caused the unwarranted arrest of a third person. *See Dutton*, 100 Ill.App.3d at 120.

8

But for causation is not enough, however, and the complaint fails to allege facts suggesting that U.S. Bank employees procured the Dugars's arrests. The Dugars do not allege that bank employees directed officers to arrest them. In their brief, plaintiffs contend that the bank sent the police to arrest the Dugars and identified them as suspects. *See* [22] at 5. Yet those allegations do not appear in the complaint. Plaintiffs also say this case is like *Dempsey v. Nathan*, No. 14 CV 812, 2014 WL 4914466 (N.D. Ill. Sept. 30, 2014). It's not. In *Dempsey*, the plaintiff alleged that private defendants directed a detective to sign a criminal complaint that led to his arrest and that his arrest was based solely on knowingly false information provided by the defendants. *See id.* at *6. Here, by contrast, plaintiffs allege that bank employees supplied false information suggesting that the Dugars were the alleged attempted bank robbers. That's not enough to raise an inference that the bank procured or directed the arrest. Further, no reasonable inference can be drawn from the complaint that the information proffered by bank employees was the sole basis for the Dugars's arrests. So under either theory—direct procurement or sole basis—the complaint fails to state a claim for false arrest.

2. *Discrimination*

Plaintiffs also allege that U.S. Bank, as a licensed business and place of public accommodation, owed them a duty not to discriminate and to treat them fairly and without prejudice. [14] ¶¶ 8–9, 15–16. The complaint alleges that the bank breached this duty when its employees provided false information indicating that plaintiffs were the attempted robbers "simply because of the color of their skin." *Id.* ¶ 16. The

9

Dugars argue that, in the absence of a specific law, the court should find that defendant had a duty not to discriminate against them, considering the likelihood and foreseeability of injury, the magnitude of the burden in guarding against the risk of such injury, and the consequence of placing that burden on the defendant. *See* [22] at 6 (citing *Kirk v. Michael Reese Hospital and Medical Center*, 117 Ill.2d 507, 526 (Ill. 1987)).

Illinois imposes a duty against discrimination through statute, not tort law. The Illinois Human Rights Act, 775 ILCS §§ 5/1-101, *et seq.*, prohibits banks and other places of public accommodation from discriminating against customers on the basis of race. *Id.* §§ 5/1-103(Q), 5/5-101(A)(6), 5/5-102(A). The Act further provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." *Id.* § 5/8-111(D). This provision demonstrates "that the 'subject' of an alleged 'civil rights violation' must be heard under the procedures of the Act." *Richards v. U.S. Steel*, 869 F.3d 557, 563 (7th Cir. 2017). While a business's misconduct may still form the basis of a common-law tort, a plaintiff must prove the elements of the tort are "*independent* of any legal duties created by the Illinois Human Rights Act" and "[can]not pursue [a] claim of discrimination under the guise of the common-law tort." *Id.* at 563–64. In other words, the question is "whether the plaintiff states a valid common-law claim without needing to rely on the rights and duties created by the Human Rights Act." *Id.* at 564.

Plaintiffs have not identified any decision of the Illinois Supreme Court to find an independent duty not to discriminate under common law, and the duty they articulate fits within "an alleged civil rights violation" defined by the Act. *See id*. at 563. By falsely suggesting the Dugars were complicit in an attempted bank robbery, the bank arguably denied them the full and equal enjoyment of the bank's services. *See* 775 ILCS 5/5-102(A). Illinois would not recognize a new duty when the legislature has prohibited the recognition of civil rights violations outside of the Act.

This makes sense when considering first principles. If the burden of guarding against the injury would be too cumbersome and imposition of the duty would be out of step with the existing expression of public policy, then Illinois will not recognize a common-law duty. *Kirk*, 117 Ill.2d at 526–27. Here, the expression of public policy against discrimination by places of public accommodation is in the Illinois Human Rights Act, and comprehensive statutory schemes counsel against judicial common-law intervention. And while banks can likely train employees on how to respond to a robbery, *see below* at 14–16, guarding against invidious discrimination in employee-eyewitness reporting to law enforcement responders is a much more complicated endeavor—one ill-suited to the modern common law. Finally, plaintiffs have not shown any likelihood of injury from negligent or careless racial profiling in bank-robbery victim reporting, nor why any such likelihood would justify the chilling effect on crime reporting that would follow from placing the burden on defendants. To the extent that plaintiffs argue that defendant had a duty to communicate accurate information about suspects to police, *see* [22] at 8–9, that is simply "not the law" in

11

Illinois. *See Williams v. City of Champaign*, 524 F.3d 826, 830 (7th Cir. 2008) (noting it would "end the reporting of crimes to police by private persons" if those who are "careless in reporting a crime to the police should be liable for false arrest if acting on the report the police arrest an innocent person"). No separate duty exists.[4]

   3.   *Negligent Hiring, Training, and Supervision*

Plaintiffs allege that U.S. Bank had an obligation to hire racially sensitive employees, yet it hired employees who "were not competent to work with diverse customers." *See* [14] ¶¶ 25–27. The Dugars say the bank failed to fulfill its obligation to train its employees to be racially sensitive and to deal with a racially diverse customer population. *Id*. ¶¶ 33–35, 39. Plaintiffs say their seizure at gunpoint and arrest were a foreseeable consequence of defendant's failure to train its employees. *Id*. ¶ 36. Finally, the Dugars allege that U.S. Bank failed to properly supervise its employees because it "allowed its employees to have customers arrested without any evidence of any … crime by these customers." *Id*. ¶¶ 42–44.

Under Illinois law, an employer may be found directly liable "for negligently hiring, or retaining in its employment, an employee it knew, or should have known, was unfit for the job so as to create a danger of harm to third persons." *Van Horne v. Muller*, 185 Ill.2d 299, 310 (1998). A plaintiff who brings a negligent hiring claim must plead:

---

[4] Because there is no Illinois Supreme Court authority on the question, this is necessarily a prediction of what that court would hold if presented with the issue. *See NES Rentals Holdings, Inc. v. Steine Cold Storage, Inc.*, 714 F.3d 449, 452 (7th Cir. 2013) (federal court sitting in diversity must make "best prediction" of how state's highest court would decide the case).

12

> (1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury.

*Id.* at 311. Plaintiffs' negligent-hiring claim fails because the amended complaint contains no allegations that defendant's employees were particularly unfit, let alone facts showing U.S. Bank knew or should have known of such unfitness. Allegations of general unfitness do not suffice. *See id.* at 313 ("To successfully plead a cause of action for negligent hiring or retention, it is not enough for the plaintiff to simply allege that the employee was generally unfit for employment."). The complaint's allegation that bank employees were not competent to deal with racially diverse customers does not imply that defendant knew or should have known that its employees were particularly unfit and created a danger to third parties. And the complaint is devoid of facts showing that U.S. Bank's act of hiring proximately caused their arrest.

Plaintiffs also assert claims for negligent supervision and negligent training. To plead negligent supervision, a plaintiff must demonstrate that "(1) the defendant had a duty to supervise the harming party, (2) the defendant negligently supervised the harming party, and (3) such negligence proximately caused the plaintiff's injuries." *Doe v. Coe*, 2019 IL 123521, ¶ 52. The duty is a general one, and the extent of supervision required "depends on many factors, such as the work performed, the employees performing it, the size of the business, the type of work, and the employer's clientele, among others." *Id.* ¶ 58. Prior notice of an employee's particular unfitness

13

is not required in this context; rather, "only general foreseeability is required." *Id*. ¶ 61.

The Dugars contend that U.S. Bank had a duty to supervise its employees "before they send police to arrest its customers for bank robbery" and defendant breached this duty by "allow[ing] its employees to have customers arrested without any evidence of any such crime by these customers." [14] ¶¶ 43–44. But a defendant has no general duty to supervise its employees while they proffer information to police after witnessing a crime. Conclusory allegations aside, plaintiffs fail to provide factual allegations that reasonably suggest defendant negligently supervised its employees, or that defendant's negligent supervision somehow proximately caused their injuries. There are no allegations to suggest that a watchful eye over an employee speaking to the police would have improved the quality of information or deterred an employee from carelessly identifying the Dugars as suspects, even if such a duty existed under Illinois law. *See Williams*, 524 F.3d at 830 (no liability for false arrest for carelessness in reporting crime to law enforcement).

Finally, plaintiffs bring a negligent training claim. Whether an employer has a duty to train its employees is "best analyzed under principles generally applicable to negligence cases." *McNerney v. Allamuradov*, 2017 IL App (1st) 153515, ¶ 61. Illinois courts have not recognized a general duty to train employees but instead ask "whether the plaintiff and defendant stood in such a relationship to one another that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Vancura v. Katris*, 238 Ill.2d 352, 383 (2010) (citation omitted). The

duty inquiry considers: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing the burden on the defendant. *See id*.

Plaintiffs say that "unless employees of the defendant are properly trained, racially diverse customers will be treated in a discriminatory fashion." [14] ¶ 36. That seems plausible enough, but is too general for the claim asserted here. To state a claim for negligent training, plaintiffs need to allege a duty to train against the injury—the allegedly false arrest based on racially discriminatory information, not discrimination generally.[5] The Dugars further argue that "[b]ecause banks know that tellers are often targeted by robbers, it is foreseeable that a teller will provide police with information to assist in the identification and arrest of the alleged robber, and that police will rely on this information." [22] at 12. Plaintiffs posit that because bank robberies are foreseeable, U.S. Bank had a duty to implement "policies and procedures that would require [employees] to provide police with accurate identifying information and prevent against the potential for tellers to invoke their own bias and prejudice when reporting crimes." *Id*.

This is a more specific articulation of a possible claim, and fraught and violent interaction between police officers and civilians has become an established occurrence, but it falls short as a matter of foreseeability. It is neither reasonably foreseeable nor likely that, without adequate training, an employee who witnesses a crime will give police officers false information based on racial biases leading to the

---

[5] As discussed above, there is no general negligence duty to not discriminate.

arrest of innocent customers. A legal duty "requires more than a mere possibility of occurrence" and no one "can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded." *Cunis v. Brennan*, 56 Ill.2d 372, 376 (1974). While "reasonable foreseeability is an elusive concept," it does not "ignore[ ] common sense." *Schmid v. Fairmont Hotel Co.-Chicago*, 345 Ill.App.3d 475, 485 (1st Dist. 2003). The attenuated connection between the training sought and the injury alleged here does not justify a finding that defendants had a duty to train employees to eliminate their biases when reporting crimes to police. Further, plaintiffs have not provided any allegations to suggest that more training by defendant would have prevented their injuries.

Counts II, III, and IV are dismissed.[6]

## IV. Conclusion

Plaintiffs' motion to remand, [10], is denied. Defendant's motion to dismiss, [15], is granted. Plaintiffs amended the complaint once in response to a motion to dismiss that argued that there was no duty under common-law negligence principles. *See* [7]; [12]; [13]. Another amendment to assert negligence claims would be futile

---

[6] Defendants also ask that I strike punitive damages from the complaint and claim that plaintiffs have not pled recoverable damages. While the complaint fails to state a claim for relief, the form of relief does not provide a basis for dismissal at the Rule 12(b)(6) stage. *See* Fed. R. Civ. P. 54(c) (final judgments "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"). Moreover, plaintiffs' amended complaint refers to monetary loss, *see* [14] ¶¶ 11, 24, 32, 41, 49, which is enough to put emotional damages on the table under Illinois law. *See Cochran v. Securitas Sec. Servs. USA, Inc.*, 2017 IL 121200, ¶ 23 (when "emotional distress is simply an element of plaintiff's damages … there is no principled reason to disallow the recovery of emotional distress damages upon proof of ordinary negligence").

16

because all of plaintiffs' negligence theories founder on issues of duty (and the related issue of foreseeability) and causation that cannot be cured by amendment. The dismissal of the negligence claims is with prejudice. But the amended complaint was plaintiffs' first attempt to plead a claim of false arrest. The dismissal of the false-arrest claim is without prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) (plaintiffs should be given at least one opportunity to try to amend complaint before the entire action is dismissed). Any attempt to replead a false-arrest claim must be in an amended complaint due by January 12, 2022. If no amended complaint is filed, the dismissal of the false-arrest claim will convert to a dismissal with prejudice and the Clerk will enter a final judgment.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: December 22, 2021

17