UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| OTTIS DUGAR and DEMITRI DUGAR,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION, et al.,<br><br>Defendants. | No. 21 CV 4052<br><br>Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiffs Ottis and Demitri Dugar went to a U.S. Bank branch in Oak Park, Illinois, and that same day, a Black man attempted to rob the bank. Two bank employees, Teresa Frausto and Jennifer Tirado, reported to the local police that the Dugars, who are both Black, were involved in the attempted robbery. But the Dugars had done nothing wrong. The Dugars say that the bank employees caused their arrest through an act of racial discrimination. In their second amended complaint, the Dugars bring claims for false arrest and discrimination in making and enforcing contracts. For the reasons that follow, defendants' motion to dismiss is granted.

I. Legal Standards

A complaint must contain a short and plain statement that suggests a plausible right to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). I accept all factual allegations as true and draw

all reasonable inferences in plaintiffs' favor, but I disregard legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678. A plaintiff must provide "more than labels" or "a formulaic recitation of a cause of action's elements," *Twombly*, 550 U.S. at 555, and the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562.

## II. Background

One morning in February 2020, Ottis Dugar (an 86-year-old Black man) and Demitri Dugar (a 67-year-old Black woman) visited their local U.S. Bank branch to conduct a financial transaction. [25] ¶¶ 2–3, 6, 16.[1] The Dugars knew several people working at the bank, including the security guard. *Id.* ¶ 11. The same day, a 30-to-40-year-old Black man tried to rob the branch. *Id.* ¶ 7. Bank employees Teresa Frausto and Jennifer Tirado reported to the local police that a Black female in her 50s and a Black male approximately 60 in the Dugars' blue pickup truck were involved in an attempted robbery; they knew that reporting this information would result in the Dugars' arrest and detention. *Id.* ¶¶ 13, 19–20.

Yet neither the Dugars nor their vehicle had anything to do with the attempted robbery, and they had no connection to the alleged robber. *Id.* ¶¶ 8–10, 14–15. The Dugars were more than 25 years older than the individual who attempted to rob the bank, and they did not match his description. *Id.* ¶¶ 17–18. Nevertheless, solely based

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the second amended complaint, [25].

2

on the information Frausto and Tirado provided, local police officers stopped, seized at gunpoint, arrested, and threatened the Dugars. *Id.* ¶¶ 21–24. The Dugars say the defendants' conduct amounted to racial disparagement and the deprivation of the Dugars' full enjoyment of the bank's accommodations. *Id.* ¶¶ 26, 32–35.

The Dugars originally filed suit in the Circuit Court of Cook County, bringing a common-law negligence claim against U.S. Bank. After the bank timely removed the case to federal court and moved to dismiss, the Dugars amended their complaint as a matter of course and added claims under Illinois law for false arrest and negligent hiring, training, and supervision. The bank then moved to dismiss the amended complaint, and I dismissed the false-arrest claim without prejudice and granted leave to amend that claim (I dismissed the negligence claims with prejudice). [24]. The Dugars' second amended complaint adds Frausto and Tirado as defendants, repleads the false-arrest claim, and raises a new race-discrimination claim under 42 U.S.C. § 1981.[2] Defendants move to dismiss.

### III. Analysis

#### A. False Arrest

To state a claim for false arrest, the Dugars must allege that the defendants restrained or arrested them without reasonable grounds to believe they'd committed

---

[2] Defendants suggest that Tirado and Frausto should be dismissed because there's no allegation that they were working outside the scope of their employment. *See* [28] at 11–12. Defendants cite no authority to support this argument, and neither Illinois agency law nor § 1981 bars suits against employees on this basis. *See Towns v. Yellow Cab Co.*, 73 Ill.2d 113, 124 (1978) (if agency relationship exists, any act of the agent which renders the principal liable also renders the agent liable); *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 896 (7th Cir. 2015) (a third party can be liable under § 1981 for interfering with the plaintiff's contractual relationship).

3

a crime. *See Meerbrey v. Marshall Field & Co.,* 139 Ill.2d 455, 474 (1990). Private individuals may be liable for false arrest if they "caused or procured" the plaintiff's arrest. *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 618 (7th Cir. 1989) (citation omitted). To cause or procure an arrest, a defendant must have "personally participated [in the arrest] by direct act or by indirect procurement." *Schroeder*, 875 F.2d at 618 (quoting *Campbell v. Kaczmarek*, 39 Ill.App.3d 465, 469 (1st Dist. 1976)). In other words, a private individual "may be liable for false arrest only upon a showing that they commanded or mounted a campaign … to procure the plaintiff's arrest." *Gaddis v. DeMattei*, 30 F.4th 625, 633 (7th Cir. 2022) (citations omitted). Merely giving information to the police—whether true or false—is not enough to demonstrate participation in an arrest. *See id.*; *Butler v. Goldblatt Bros.*, 589 F.2d 323, 326 (7th Cir. 1978) ("[A] private party who furnishes inaccurate information to law enforcement officers could not be held liable for false arrest on that ground alone." (citing *Morris v. Faulkner*, 46 Ill.App.3d 625, 629 (5th Dist. 1977))).

The Dugars do not argue that defendants campaigned for their arrest. Instead, they contend that defendants are liable for false arrest because Frausto and Tirado reported to the police that the Dugars were involved in the robbery, and the police relied upon only this information to arrest the Dugars. *See* [32] at 4.

To support their theory, plaintiffs rely on the so-called "sole-basis" rule from *Odorizzi v. A. O. Smith Corp.*, 452 F.2d 229 (7th Cir. 1971). There, the court observed that: "In Illinois cases holding a private party guilty of false imprisonment, the defendant has either directed an officer to arrest the plaintiff or has procured the

4

arrest by giving information which was the sole basis for the arrest." *Id.* at 231. And Illinois courts have cited *Odorizzi* in identifying the sole-basis rule as one way to prove a false-arrest claim against a private defendant. *See, e.g., Randall v. Lemke*, 311 Ill.App.3d 848, 852 (2nd Dist. 2000); *Dutton v. Roo–Mac, Inc.*, 100 Ill.App.3d 116, 119 (2nd Dist. 1981).

The Dugars read *Odorizzi* to create a literal sole-basis rule that it did not and could not create. *Odorizzi* described a means of procuring an arrest that must be understood within the well-settled rule that merely giving information to police does not amount to participation in an arrest. *See Gaddis*, 30 F.4th at 633 (citing *Odorizzi*, 452 F.2d at 232). Plaintiffs say "providing information which is the sole basis of the arrest, without other potential suspects, without an independent investigation, constitutes participation in the arrest for false arrest liability." [32] at 6. But there are circumstances—this being one of them—when a person both merely provides information to the police *and* the police make an arrest without further investigation. It would make little sense to condition a defendant's liability upon whether the police decide to verify the information a defendant provides or not.

Neither *Odorizzi* nor the Illinois cases cited therein support such a rule. In *Green v. No. 35 Check Exch., Inc.*, 77 Ill.App.2d 25 (1st Dist. 1966), for example, the defendant not only gave information to the police but also "accused the plaintiff in the presence of one or more police officers ... of committing one or more felonies" and requested that police arrest the plaintiff. *Id.* at 26. The other Illinois cases cited in *Odorizzi* further demonstrate that even when a defendant provides the only

5

information relied upon by police to make an arrest, liability requires some further affirmative step to procure an arrest. *See Odorizzi*, 452 F.2d at 231 (citing *Lindquist v. Friedman's, Inc.*, 366 Ill. 232 (1937) (detaining plaintiffs), *Aldridge v. Fox*, 348 Ill.App. 96 (1st Dist. 1952) (same), and *Ferrell v. Livingston*, 344 Ill.App. 488 (1st Dist. 1951) (manufacturing evidence and directing police to lock up plaintiff)). And *Odorizzi* makes clear that a false-arrest claim will not lie against a victim of a crime who "merely made a complaint and gave information to the police." *Odorizzi*, 452 F.2d at 231 (citing *Shelton v. Barry*, 328 Ill.App. 497 (1st Dist. 1946)).

The rule in Illinois, then, is that even when a private defendant was the sole source of information for arresting officers, the plaintiff must still show that the defendant encouraged or "affirmatively instigated the arrest in some way." *Carey v. K-Way, Inc.*, 312 Ill.App.3d 666, 670 (1st Dist. 2000). As the Seventh Circuit recently put it, a private defendant is liable for false arrest "only upon a showing that they commanded or mounted a campaign … to procure the plaintiff's arrest." *Gaddis*, 30 F.4th at 633 (citing *Odorizzi*, 452 F.2d at 231). The Dugars have not identified, nor have I found, an Illinois case holding a private defendant liable for being the sole basis of information without the defendant *also* taking some further step to prompt police to arrest the plaintiff.

Examples of affirmative steps include signing a criminal complaint, detaining the plaintiff until police arrive, or asking police to arrest the plaintiff. *See Butler*, 589 F.2d at 326 (vacating judgment for plaintiff when record demonstrated that defendant "did not in any way detain the [plaintiffs], nor did it sign a complaint

6

against them or direct the officers to arrest them"); *see also Goldenberg v. Schaumburg Dodge, Inc.*, No. 82 C 6346, 1984 WL 872, at *6 (N.D. Ill. Aug. 16, 1984); *Universal Foods Corp. v. Laurix*, 521 F.Supp. 932, 934 (N.D. Ill. 1981). But when a private defendant does "nothing more than give information to the police, who were then free to decide for themselves whether or not [the plaintiff] should be arrested," a plaintiff cannot prevail on a false-arrest claim against the civilian. *Butler*, 589 F.2d at 326; *see also Middleton v. Kroger Co.*, 38 Ill.App.3d 295, 296–98 (3rd Dist. 1976) (no procurement of arrest by store-employee defendant who called police on plaintiff and identified him but did not sign a criminal complaint against the plaintiff, detain him, or ask the police officer to arrest him).

Here, the second amended complaint alleges merely that Frausto and Tirado gave police inaccurate information that the Dugars were involved in the robbery. There's no allegation that bank employees asked officers to arrest the Dugars, signed any complaint against them, or detained them. Accordingly, with nothing to suggest that Tirado, Frausto, or the bank campaigned for the Dugars' arrests, the second amended complaint fails to state a claim for false arrest. This is plaintiffs' third complaint, and the second dismissal of the false-arrest claim under Rule 12(b)(6). Although plaintiffs have added some new allegations, they do not make the false-arrest claim any more plausible. Further amendment would be futile, and therefore, Count I is dismissed with prejudice.

7

B.    Section 1981

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The law bars "race discrimination in the making and enforcing of contracts." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). While more often invoked in the context of employment contracts, courts "have evaluated § 1981 claims made by plaintiffs who allege that they faced illegal discrimination in retail establishments." *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006), as amended on denial of reh'g (May 25, 2006). "To establish a claim under § 1981, the plaintiffs must show that (1) they are members of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making and enforcing of a contract)." *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996).

Defendants argue that the complaint fails to allege both the second (intent) and third (discrimination concerned right to contract) elements. The Dugars counter that their allegations that defendants intentionally accused Black customers and injured plaintiffs for "banking while Black" sufficiently plead intent. [25] ¶¶ 33, 35. Although the complaint lacks clarity or specificity on the issue of intent, a reasonable inference can be drawn that defendants accused plaintiffs of the robbery because of their race.[3] That is enough to provide defendants fair notice of the intent element,

---

[3] The Dugars allege that the bank has had other suits filed against it due to its employees' treatment of Black customers. [25] ¶¶ 30–31. They attach a December 2021 news article

which is all Rule 8 requires. *See Williams v. Dart*, 967 F.3d 625, 638 (7th Cir. 2020) (allegation that sheriff targeted plaintiffs for detention because of their race "is fair notice" of discrimination claim); *see also* Fed. R. Civ. P. 9(b) (intent may be alleged generally).

The Dugars' § 1981 claim fails, however, because they have not alleged that the bank interfered with their "right to make and enforce a contract." *Morris*, 89 F.3d at 414. They do not allege that the bank denied them any service, asked them to leave, or refused to do business with them at any point. *See id.* Instead, the Dugars argue, defendants deprived them of their full enjoyment of the accommodations of the bank and they no longer do business with U.S. Bank because of the discrimination they faced. [32] at 9.

But alleging defendants' actions "discouraged and dissuaded them" from doing business with the bank is not enough under § 1981. *See Morris*, 89 F.3d at 414 ("[Plaintiffs'] allegation that [defendant] interfered with their 'prospective contractual relations' is speculative and insufficient to state a claim under § 1981."). The Dugars do not allege that they sought to re-engage the bank and the bank refused

---

about U.S. Bank's CEO's letter to the Minneapolis community apologizing for the bank's treatment of a Black customer at its branch in Columbia Heights, Minnesota. [25-1]. Defendants suggest that I strike the exhibit because it's irrelevant. [28] at 2, 10. I decline to strike the exhibit. Nevertheless, defendants are correct that a separate incident, in a different state, months after the incident here occurred, does not support plaintiffs' § 1981 claim. *See Otis v. Wetter*, 111 Fed. App'x 433, 435 (7th Cir. 2004) (plaintiff "cannot rely on" defendant's treatment of "other customers to support her claims under §§ 1981 and 1982 because she has standing to challenge only actions that personally caused her injury" (citing *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004))).

them service. They decided to stop doing business with the bank in the wake of their arrest, but that's insufficient to show that defendants interfered with a contract interest under § 1981. *See id.* at 414–15 ("A claim for interference with the right to make and enforce a contract must allege the actual loss of a contract interest, not merely the possible loss of future contract opportunities."); *see also Bagley v. Ameritech Corp.*, 220 F.3d 518, 521–22 (7th Cir. 2000) (no violation of § 1981 when defendant does not deny service and plaintiff decides to "cut off" relationship when defendant remained willing to contract).

The Dugars do not request leave to amend nor suggest that they could offer additional facts to cure the deficiencies of the complaint. Because further amendment of Count II would be futile, it is also dismissed with prejudice.

## IV. Conclusion

Defendants' motion to dismiss, [28], is granted. The second amended complaint is dismissed with prejudice. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: June 10, 2022